1
2
3
4
5

Kenneth R. Dyrud
Don C. St. Peter
ST. PETER, WARREN & DYRUD, P.C.
2620 Radio Way
Missoula, MT 59808
(406) 728-8282

Attorneys for Plaintiff

6
7
8
9

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA, MISSOULA DIVISION

| | |
|---|---|
| LAURENCE AYRES, M.D.,<br><br>                    Plaintiff,<br><br>vs.<br><br>MISSOULA ANESTHESIOLOGY, P.C., a<br>Montana Professional Corporation; JOHN C.<br>BOHNERT, M.D.; FRED G. FLEMING, M.D.;<br>JOHN R. KIRKEIDE, M.D.; CHRISTOPHER<br>A. ROCK, M.D.; JOHN DOES 1-30, and<br>JANE DOES 1-10,<br><br>                    Defendants. | Cause No. CV-07-27-M-DWM<br><br><br>COMPLAINT AND<br>JURY DEMAND |

## I. PARTIES, JURISDICTION AND VENUE

1.1     Plaintiff, Laurence ("Larry") V. Ayres, M.D. (referred to herein as "Dr.

Ayres"), a Board Certified anesthesiologist, is a resident of Missoula, Montana

and has been providing his medical specialty services to patients in this area

since 1984.  Dr. Ayres seeks appropriate relief from the Court, under the laws of

The United States and the State of Montana, as he attempts to continue his

medical practice in Missoula, without unlawful restraint by the Defendants, and

 not be forced to leave Missoula to provide his professional services to patients.

COMPLAINT AND JURY DEMAND                                    PAGE 1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

1.2     Defendant Missoula Anesthesiology, P.C. ( referred to herein as "Missoula Anesthesiology Group" or "Missoula Anesthesiology") is a Montana Professional Corporation comprised of twenty-six (26) actively practicing anesthesiologists, all of whom practice in the Missoula area market.

1.3     Defendant, John C. Bohnert, M.D. (referred to herein as "Dr. Bohnert"), is a shareholder and current or former Officer and Director of Missoula Anesthesiology, who practices anesthesiology in the Missoula area market.

1.4     Defendant, John R. Kirkeide, M.D. (referred to herein as "Dr. Kirkeide"), is a shareholder and current or former Officer and Director of Missoula Anesthesiology, who practices anesthesiology in the Missoula area market.

1.5     Defendant, Fred G. Fleming, M.D. (referred to herein as "Dr. Fleming"), is a shareholder and current or former Officer and Director of Missoula Anesthesiology, who practices anesthesiology in the Missoula area market.

1.6     Defendant, Christopher A. Rock, M.D. (referred to herein as "Dr. Rock"), is a shareholder and current or former Officer and Director of Missoula Anesthesiology, who practices anesthesiology in the Missoula area market.

1.7     Defendants John Doe 1-30, and Jane Doe 1-10 are individuals, or separate legal entities established by them or others, as the case may be, that have knowingly authorized, aided, ratified or participated in effecting unlawful conspiracies or contracts, or other unlawful conduct, as alleged herein.

1.8     Defendants Bohnert, Fleming, Kirkeide and Rock, together with Defendants John Doe 1-30 and Jane Doe 1-10, are collectively referred to herein as "individual Defendants", or if in combination with Defendant Missoula Anesthesiology, as "Defendants", unless the context otherwise dictates.

COMPLAINT AND JURY DEMAND                                    PAGE 2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

1.9    On information and belief, a very substantial percentage of the Defendants' revenue comes from sources located outside of Montana including, without limitation, the federal government or its agencies through payments made by programs such as Medicare, Medicaid, Federal Employee Benefit Plans and the Civilian Health and Medical Program of the Uniformed Armed Services.

1.10    On information and belief, Defendants provide services, annually, to thousands of patients who have healthcare coverage through healthcare plans and insurance companies located in states other than Montana; and, the prices paid to Defendants by such out-of-state plans and companies for Defendants' services have a direct, substantial impact on the cost of plan and insurance benefits to the patient consumers of Defendants' services.

1.11    On information and belief, shareholders or employees of Missoula Anesthesiology engaged in the active practice of anesthesiology (referred to herein as "members" of Missoula Anesthesiology) purchase a substantial portion of the medications, supplies and equipment they utilize in their practice from vendors located outside of the State of Montana.

1.12    This action is brought pursuant to Sections 1 and 2 of the Sherman Act (15 U.S.C. §§1 and 2), and Sections 4 and 16 of the Clayton Act (15 U.S.C. §§15 and 26).  Plaintiff's state law claims arise under Montana law.

1.13    Subject matter jurisdiction of this Court is founded on the statutes identified in the preceding paragraph, and 28 U.S.C. §1331.  The Court has Supplemental Jurisdiction of state law claims arising under Montana law.

1.14    Venue is proper in this District and Division pursuant to 28 U.S.C. §1391(b), and Rule 1.11 of this Court's Local Rules of Procedure.

COMPLAINT AND JURY DEMAND                                    PAGE 3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

## CIRCUMSTANCES UNDERLYING ANTITRUST CLAIMS

2.1    Missoula, Montana is the only location within a region of Western Montana, consisting of all or portions of Missoula, Mineral, Sanders, Lake, Granite and Ravalli Counties with general or comprehensive, primary care hospitals and affiliated or non-affiliated ambulatory surgery centers.

2.2    There is no other location less than approximately one hundred, twenty (120) miles from Missoula that offers primary care hospital services and ambulatory surgery center services, similar to those offered in Missoula.

2.3    Because of Missoula's insular location, among other factors, the anesthesiology services provided by anesthesiologists or nurse anesthetists working outside the Missoula market area, as described herein, are not practical or reasonable alternatives to anesthesiology services provided in Missoula.

2.4    Twenty-six (26) of the twenty-seven (27) actively practicing anesthesiologists with regular staff privileges at either of Missoula's hospitals or any of Missoula's surgery centers are members of Missoula Anesthesiology (except temporary or "locum tenens" physicians).  Dr. Ayres is the exception.

2.5    There are no anesthesiologists, other than members of Missoula Anesthesiology, who have staff privileges at the two largest of Missoula's three surgery centers, Big Sky Surgery Center and Missoula Bone and Joint Surgery Center; and at the third, Providence Surgery Center, Dr. Ayres is the only other anesthesiologist with privileges (except temporary or "locum tenens" physicians).

2.6    There are no nurse anesthetists who have clinical or staff privileges to provide anesthesiology services at any Missoula hospital or surgery center.

2.7     Anesthesiologists or nurse anesthetists who do not hold privileges at Missoula's two primary care hospitals, Community Medical Center and St. Patrick Hospital and Health Sciences Center, are not permitted to provide anesthesiology services at those hospitals.  Accordingly, patients in need of such primary care hospital anesthesiology services have no alternative to the anesthesiologists who hold clinical privileges at those two hospitals.

2.8     Anesthesiologists or nurse anesthetists who do not hold privileges at Missoula's three surgery centers are not permitted to provide anesthesiology services at those surgery centers.  Accordingly, patients in need of ambulatory surgery anesthesiology services have no alternative to the anesthesiologists who hold privileges at those surgery centers.

2.9     Anesthesiology services are a separate and distinct product from other medical services provided by hospitals and surgery centers in that anesthesiologists receive extensive, specialized training in the use and application of anesthesiology procedures.  Physicians who are not trained in the area of anesthesiology cannot perform services provided by anesthesiologists.

2.10   Upon information and belief, anesthesiologists who are employees or shareholders of Missoula Anesthesiology have legal, financial or competitive interests distinct from those of Missoula Anesthesiology and each other, such that it represents a combination of individual physicians engaged in rendering distinct and independent, professional services within the Missoula area market.

2.11   The individually named Defendants herein, as well as John Doe Defendants 1-30 and Jane Doe Defendants 1-10, have knowingly authorized, carried out, aided, ratified and/or participated in the unlawful conduct

of Missoula Anesthesiology, acting in concert with other persons or entities, as alleged herein.

2.12    Through exclusivity contracts and similar arrangements effected, implemented and maintained by the Defendants with the two largest surgery centers, Dr. Ayres, and any anesthesiologist who is not a member of Missoula Anesthesiology, are entirely precluded from competing with members of Missoula Anesthesiology, and are denied the opportunity to provide services to patients and surgeons at those surgery centers.  Patients are likewise precluded from choosing anesthesiologists other than members of Missoula Anesthesiology.

2.13    Before the Defendants obtained and exercised effective control of the scheduling and provision of anesthesiology services in the Missoula area market, by means of the unlawful restraints, contracts or conspiracies alleged herein, surgeries were scheduled in a manner that accommodated choices for a particular anesthesiologist by patients or surgeons.  In the absence of such restraints, Dr. Ayres was able to compete for many years with members of Missoula Anesthesiologists upon the basis of the quality and price of his services.

2.14    Missoula Anesthesiology has acquired monopoly power within the relevant Missoula area market for anesthesiology services, both the product and geographic market.  It has engaged in conduct intended to maintain or augment its monopoly power and unreasonably restrain competition and consumer choice; and, its conduct has, in fact, resulted in unreasonable restraint on competition.

2.15    The intentional or willful conduct of Defendants, undertaken in concert with other persons and entities, includes the following:

a.    Dictating or manipulating the scheduling of anesthesiology services performed at Missoula's hospitals and surgery centers, such that Dr.

COMPLAINT AND JURY DEMAND                                    PAGE 6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

Ayres, or any anesthesiologist who is not a member of Missoula Anesthesiology, cannot reasonably maintain a viable anesthesiology practice in the Missoula area market.  As a proximate result of such conduct, patients are restricted in their choice of anesthesiologists, for all practical purposes, within the entire market;

b.      Refusing to exchange coverage with Dr. Ayres, as prescribed under standards adopted in the anesthesiology profession, with respect to daily schedule coverage and on-call emergency coverage for surgeries, all of which are essential and required elements of providing anesthesiology services;

c.      Precipitating the effective cancellation of a Contract between Dr. Ayres and Community hospital for his provision of obstetrical anesthesiology services. Community hospital is the only facility providing obstetrical and newborn care in the Missoula area.  The Defendants' action was taken with the purpose and intention of eliminating Dr. Ayres as a competitor and enabling Missoula Anesthesiology to contract with Community to become the exclusive provider of obstetrical anesthesiology services to Community and the Missoula area market;

d.      Effecting and maintaining exclusive contracts or arrangements with Big Sky Surgery Center and  Missoula Bone and Joint Surgery Center, with the intention of eliminating Dr. Ayres (and any other anesthesiologist not affiliated with Missoula Anesthesiology) from competing with them in a substantial portion of the Missoula area market, and at the same time, limiting and unreasonably restraining patient choice and competition within the same market;

e.      Conspiring or acting in concert with other persons and entities to assume and maintain effective control of the administrative authority exercised by the anesthesiology departments at Missoula's hospitals, with the intention of unreasonably restraining the ability of Dr. Ayres (or any anesthesiologist other

COMPLAINT AND JURY DEMAND                                          PAGE 7

than members of Missoula Anesthesiology) to practice in the Missoula area market.  In addition, the same control and administrative authority was used  by certain Defendants to wrongfully subject Dr. Ayres to unjustifiable discipline by the hospitals, resulting in damage to his professional credentials and reputation.

       f.    Conspiring or acting in concert with other persons and entities to assume and maintain effective control of the administrative authority exercised by the anesthesiology departments at Missoula's hospitals, with the intention of unreasonably restraining entry of anesthesiologists to the Missoula area market and restraining competition within the same market from anesthesiologists who have discontinued their membership in Missoula Anesthesiology.

2.16   As a direct and proximate result of the conduct of the Defendants, they have secured for the Missoula Anesthesiology and its members monopoly power for the provision of anesthesiology services in the Missoula area market. Acting in concert with other persons or entities, Defendants have intentionally and unreasonably restricted and restrained competition.  Specifically, they have:

       a)    Empowered themselves to charge a premium fee, over and above market-based fees, for services provided by their members during 2004, 2005 and 2006 to subscribers of Blue Cross Blue Shield of Montana ("BC/BS"), representing a substantial percentage of the total number of consumer patients within the Missoula area market, by refusing to accept BC/BS fees in full satisfaction of their anesthesiology services and requiring BC/BS subscribers to pay the balance of the charges billed by them that were not paid by BC/BS;

       b)    Eliminated, for all intents and purposes, patient and physician choice of anesthesiologists, other than members of Missoula Anesthesiology, by making such choice practically unworkable through their scheduling, whereas

COMPLAINT AND JURY DEMAND             PAGE 8

such choice would otherwise be available to patients based upon the price and quality of services of anesthesiologists; and,

c)   Established economic, practical and professional barriers to entry into the Missoula area market by anesthesiologists and to the continuance of anesthesiology practices by anesthesiologists who have discontinued their membership in Missoula Anesthesiology.  For years, with the exception of Dr. Ayres, Defendants have effectively limited the provision of anesthesiology services in the Missoula area market to members of Missoula Anesthesiology.

2.17   As the direct and proximate result of the Defendants' unlawful conduct, Dr. Ayres is no longer able to compete with them on a fair, equitable or reasonable basis.  His continued practice of anesthesiology is now in dire jeopardy.  He faces the prospect of giving up his profession and livelihood if he remains in Missoula, or in the alternative, leaving Missoula where he has established his home and practice over the course of the past twenty-three years.

2.18   Plaintiff, Dr. Laurence V. Ayres, therefore seeks legal and equitable relief from the Court, as the law provides, and as he requests in this Complaint.

## FIRST CAUSE OF ACTION

## MAINTENANCE OF A MONOPOLY --  SHERMAN ACT, SECTION 2

3.1   Plaintiff incorporates herein and realleges each of the foregoing paragraphs, numbered 1.1 through 2.18, as if fully set forth herein.

3.2   The relevant product and geographic markets for the anesthesiology services which are the subject of this Complaint are referred to as the "Missoula area market."  For purposes of this Complaint, the geographical area of the "Missoula area market" encompasses the area that includes portions of Missoula,

COMPLAINT AND JURY DEMAND                                    PAGE 9

Mineral, Sanders, Lake, Granite and Ravalli Counties, Montana that are generally within a radius of approximately thirty to forty (30-40) miles of the City limits of Missoula (depending upon access routes and other factors) with the qualification, pending further analysis that for certain, limited specialty services the relevant geographic market may extend beyond that distance from Missoula.

3.3    For purposes of this Complaint, the relevant product market is the provision of anesthesiology services, more specifically described as the kind of anesthesiology services regularly provided by Dr. Ayres and Defendants herein.

3.4    As a direct and proximate result of the Defendants' conduct, as alleged herein, Missoula Anesthesiology, for itself and its members, has obtained monopoly power in the product and geographic market for anesthesiology services provided in the Missoula area market.

3.5    Acting with the direct and leadership aid of Defendants Kirkeide, Bohnert and Fleming, and in concert with other affiliated or non-affiliated persons or entities, Missoula Anesthesiology has exercised its monopoly power by:

a)    Entering and maintaining exclusive contracts and/or exclusive arrangements with two of three Missoula-area surgery centers, as well as obtaining an exclusive contract for provision of all obstetrical anesthesiology services provided in the Missoula area, with the purpose and intent of enabling Defendants to maintain the monopoly position of Missoula Anesthesiology in the Missoula area market, through means other than competition on the merits, thereby undermining competition by anesthesiologists in the same market;

b)    Controlling the scheduling of provision of anesthesiology services at Missoula's two primary care hospitals, such that Defendants are assured that members of Missoula Anesthesiology will be the anesthesiologists

COMPLAINT AND JURY DEMAND                                           PAGE 10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

for at least 95% of all services provided by an anesthesiologist and performed at those two hospitals, with the intention of ensuring and protecting the continuance of Defendants' monopoly position, through means other than competition on the merits, thereby undermining competition by anesthesiologists in the same market;

c)   Erecting barriers to entry in the Missoula area market by prospective anesthesiologist, and for continuing an anesthesiology practice in the same market by anesthesiologists who discontinue their membership in Missoula Anesthesiology, with the intention of ensuring and protecting the continuance of Defendants' monopoly position, through means other than competition on the merits, thereby undermining competition by anesthesiologists in the same market;

d)   Defendants have achieved those conditions or accomplished those actions alleged and described in the preceding paragraph, No. 3.5, and other paragraphs herein by, among other means:

e)   Utilizing Missoula Anesthesiology's dominance over the anesthesiology departments of both hospitals, in concert with other affiliated and non-affiliated persons or entities, with the intent and purpose of controlling the extent to which clinical privileges are reasonably provided to applicants who seek to become practicing anesthesiologists at a Missoula hospital or surgery center;

f)   Controlling, restricting and restraining the availability and choice for the provision of anesthesiology services in the Missoula area market, to the detriment of competition in the same market;

g)   Forcing all patient consumers who are enrolled in BC/BS plans, programs or policies to pay "balance bills", or a premium over and above market-based rates on all procedures that would otherwise be paid for by BC/BS.

COMPLAINT AND JURY DEMAND                                    PAGE 11

3.6    The Defendants' conduct, as alleged herein, illegally establishes and maintains their monopoly in violation of Section 2 of the Sherman Act.

3.7    There is no legitimate pro-competitive justification for Defendants' conduct, as alleged herein, and Plaintiff, Lawrence V. Ayres, is entitled to all legal and equitable relief provided by law.

**SECOND CAUSE OF ACTION**

**ATTEMPT TO MONOPOLIZE THE ANESTHESIOLOGY**

**SERVICES MARKET – SHERMAN ACT §2**

4.1    Plaintiff incorporates herein and realleges each of the foregoing paragraphs, numbered 1.1 through 3.6, as if fully set forth herein.

4.2    The product and geographic market in this case is the "Missoula area market" for anesthesiology services, as defined in Paragraph 3.2 above.

4.3    The Defendants' conduct, acting in concert with other affiliated and non-affiliated persons and entities, as alleged herein, including their procurement of exclusive contracts with the Big Sky and Missoula Bone and Joint Surgery Centers, their control of anesthesiology services at St. Patrick and Community hospitals, and their dominance and control of the Anesthesiology Departments or Committees at both hospitals, constitutes conduct that is intended to monopolize the provision of anesthesiology services in the Missoula area market.

4.4    The Defendants, through their conduct alleged herein and their exclusive contracts and positions of control of hospital anesthesiology departments, have intentionally attempted and succeeded in using their monopoly power to preclude Plaintiff from engaging competitive activity in the

COMPLAINT AND JURY DEMAND                                                      PAGE 12

1   anesthesiology services Missoula area market, at least to the extent of

2   maintaining a viable anesthesiology practice in the same market.

3        4.5    The Defendants, through the Missoula Anesthesiology Group,

4   continue to:

5           (a)    Maintain direct control over the scheduling of and provision of

6   anesthesiology services provided by all anesthesiologists working in the greater

7   Missoula area;

8           (b)    Maintain exclusive and controlling relationships in regard to

9   the provision of anesthesiology services provided at all Missoula hospitals and

10  surgery centers; and

11          (c)    Maintain control of anesthesiology departments at both

12  Missoula hospitals sufficiently to preclude anesthesiologists who are not affiliated

13  with Missoula Anesthesiology from securing privileges at Missoula hospitals, thus

14  precluding them from the Missoula area market.

15       Accordingly, there is an eminent and dangerous probability that Missoula

16  Anesthesiology will in fact, if it has not already been enabled to, monopolize the

17  market for anesthesiology services in the Missoula area market.

18       4.6    There is no legitimate procompetitive justification for the Defendant's

19  conduct.

20       4.7    Plaintiff, Lawrence V. Ayres, is entitled to all legal and equitable relief

21  provided by law.

22

23

24

25

26

---

COMPLAINT AND JURY DEMAND                  PAGE 13

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

## THIRD CAUSE OF ACTION

## CONSPIRACY TO MONOPOLIZE THE ANESTHESIOLOGY SERVICES

## MARKET-- SHERMAN ACT, SECTION 1 AND 2

5.1     Plaintiff incorporates herein and realleges each of the foregoing paragraphs as if fully set forth herein.

5.2      The relevant product and geographic markets for this claim are described in Paragraph 3.2 above.

5.3     The named Defendants herein, together with certain unnamed John Doe 1-20 and Jane Doe 1-10 Defendants herein, and other unnamed co-conspirators (all of whom are collectively referred to herein as "Conspirators") have conspired, contracted, or combined to conspire with the intention and purpose of according the Missoula Anesthesiology Group a monopoly in the provision of anesthesiology services in the Missoula area market.

5.4     The Conspirators have taken actions, as previously alleged herein, that are intended, and in fact have, furthered this conspiracy in order to maintain and unlawfully exert monopoly power acquired by Missoula Anesthesiology.

5.5     There is no legitimate pro-competitive justification for the conduct, as alleged herein, of the Conspirators.

5.6     Dr. Ayers is entitled to all legal and equitable relief provided by law, including compensatory damages proximately resulting from such conduct, in an amount to be proven at trial.

## VI.  FOURTH CAUSE OF ACTION

## TORTIOUS INTERFERENCE WITH

## CONTRACTUAL RELATIONSHIP

6.1     Plaintiff incorporates herein and re-alleges each of the foregoing paragraphs, 1.1 through 5.6, as if fully set forth herein.

6.2     During the course of Plaintiff Ayers' service as an anesthesiologist in Missoula, he developed a considerable and successful practice in providing anesthesiology services to obstetrical patients at Community Medical Center, which is the only hospital in the Missoula area that provides obstetrical and newborn medical services to patients.

6.3     In 2003, Dr. Ayres entered into a written contract with Community hospital (referred to herein as the "Contract") that accorded him the right to provide anesthesiology services for the very substantial number of obstetrical patients at that hospital.  The Contract is automatically renewed from year to year unless otherwise terminated by the parties as provided in the Contract.

6.4     Obstetrical anesthesiology services require extended hours by anesthesiologists, as well as other activities services, such that physicians providing these services can only provide them if other anesthesiologists in the community provide reciprocal, daily and on call coverage and relief for each other, in the course of providing their services to obstetrical patients.

6.5     The provision of such reciprocal coverage was open discussed with Defendants at the time Dr. Ayres entered into the Contract with Community hospital, and the Defendants told Dr. Ayres that they would provide coverage for Dr. Ayres, as an essential component or condition of the contract services.

6.6     During the first year and part of the second year of his Contract, Dr. Ayres and members of Missoula Anesthesiology (as the only other anesthesiologists actively practicing in the Missoula are market) provided reciprocal or mutual coverage for each other, as is the standard practice.

COMPLAINT AND JURY DEMAND                                    PAGE 15

6.7    Dr. Ayres justifiably relied upon the discussions with the Defendants in contracting with the hospital, and continued the performance of his Contract in reliance upon them during the pattern and course of conduct by them during the first and part of the second year of the Contract, as he and Defendants knew that he could not perform his services under the contract without such coverage.

6.8    With a full appreciation of the consequences of their actions, the Defendants intentionally and/or willfully interfered with Dr. Ayres performance and continuation of his services under the Contract by terminating any reciprocal coverage with him.  Defendants persisted in refusing to provide coverage to Dr. Ayres, knowing full well that doing so would completely preclude him from performing his services under the Contract, or securing any benefits from it.

6.9    Defendants had a legal duty not to injure and destroy Dr. Ayres ability to continue his Contract with Community hospital by terminating their coverage for him, effectively eviscerating his Contract with Community hospital.

6.10    Defendants intended to benefit themselves financially by their wrongful conduct, alleged herein.  They knew that once Dr. Ayres was no longer able to provide his services under his Contract, Defendants would assume the financial benefits he was receiving under his Contract.  Defendants did benefit and profit by their wrongdoing and have continued doing so to this date. Thus, Defendants conduct toward Dr. Ayres was designed to harm him and malicious.

6.11    As a direct and proximate result of the Defendants wrongful conduct, Dr. Ayres has been continuously harmed and damaged by such conduct up to and including the present date, as his Contract remains in effect but he cannot perform or obtain any benefit from it due to such wrongful conduct.

6.12    Defendants are liable for all form or nature of damages to which Dr.

COMPLAINT AND JURY DEMAND                                    PAGE 16

Ayres is entitled, or for which Montana law provides a remedy, due to the conduct of Defendants alleged herein, in an amount to be determined at trial.

## VII.  PRAYER FOR RELIEF

**WHEREFORE,** the Plaintiff respectfully requests the following relief:

1.      An Order of Injunctive Relief:

        a)      Voiding the exclusive agreements by Defendant Missoula Anesthesiology with the Big Sky and Missoula Bone and Joint surgery centers;

        b)      Prohibiting Defendant Missoula Anesthesiology from entering into any exclusive contracts with any general in-patient acute-care hospital or free-standing surgery center in the greater Missoula area;

        c)      Prohibiting Defendants from controlling scheduling for anesthesiologists at St. Patrick and Community Hospitals;

        e)      Prohibiting Defendant Missoula Anesthesiology from refusing to deal with Plaintiff or any other anesthesiologist unaffiliated with Defendant Missoula Anesthesiology.

2.      An award of three (3) times the actual damages suffered by Plaintiff resulting from Defendants' violation of the Sherman Act and the Clayton Act.

3.      An award of Plaintiff's attorneys' fees and costs.

4.      Order such other relief as the Court may deem just and proper.

RESPECTFULLY SUBMITTED this 16th day of March, 2007.

                        ST. PETER, WARREN & DYRUD, P.C.

                         /S/ Kenneth R. Dyrud
                        Kenneth R. Dyrud
                        St. Peter, Warren & Dyrud
                        Attorney for Plaintiff

COMPLAINT AND JURY DEMAND                                    PAGE 17